ORDERED UNSEALED on 08/10/2023   s/ judepeters

SEALED

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. SHANTAL HERNANDEZ, Defendant. | Case No. **23mj2882-JLB**<br><br>COMPLAINT FOR VIOLATION OF:<br>Title 18 U.S.C., Section 2243(b) – Sexual Abuse of a Ward |

The undersigned complainant being duly sworn states:

### Count One

On or about March 6, 2023, within the Southern District of California, defendant SHANTAL HERNANDEZ did knowingly engage in a sexual act with I.K.N., a person in official detention in the Otay Mesa Detention Center and under the custodial, supervisory, and disciplinary authority of defendant, when SHANTAL HERNANDEZ's mouth made contact with I.K.N.'s penis, in violation of Title 18, United States Code, Section 2243(b).

### Count Two

Between approximately February 2023 and April 2023, within the Southern District of California, defendant SHANTAL HERNANDEZ did knowingly engage in a sexual act with I.K.N., a person in official detention in the Otay Mesa Detention Center and under the custodial, supervisory, and disciplinary authority of defendant, when I.K.N.'s penis penetrated SHANTAL HERNANDEZ's genital opening, in violation of Title 18, United States Code, Section 2243(b).

//

And the complainant states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

*Teresa Cardona*
_____
Teresa Cardona
Special Agent
Office of Professional Responsibility

Sworn and attested to under oath by telephone in accordance with Federal Rule of Criminal Procedure 4.1, on August __8__, 2023.

_____
HON. JILL L. BURKHARDT
UNITED STATES MAGISTRATE JUDGE

**PROBABLE CAUSE STATEMENT**

I.K.N. is a citizen of a country other than the United States; his testimony is material, that is impracticable to secure his attendance at the trial by subpoena; and he is a material witness in relation to this criminal charge and should be held pursuant to Title 18, United States Code, Section 3144.

On or about March 28, 2023, in San Diego, California, an employee of Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), filed a complaint with the DHS Joint Intake Center alleging that SHANTAL HERNANDEZ, now a former Immigration Detention Case Manager (IDCM) contracted by the DHS, Office of Immigration Detention Ombudsman (OIDO), had been spending an unusual amount of time with ICE detainee I.K.N. in the Otay Mesa Detention Center (OMDC). OMDC is a federal detention center for purposes of Title 18, United States Code, Section 2243(b). I.K.N. has been detained at OMDC since September 25, 2022. As part of HERNANDEZ's duties, she managed the complaints of ICE detainees in various detention facilities throughout San Diego County and had unfettered access to all ICE Detention Centers. The ICE employee was concerned because, on March 27, 2023, HERNANDEZ entered OMDC after she had been instructed by her supervisor not to go to OMDC until further notice.

On March 28, 2023, DHS, ICE Office of Professional Responsibility (OPR) received information from the OMDC CoreCivic warden regarding communication between I.K.N., using a recorded phone at OMDC to HERNANDEZ's personal phone number. OPR obtained all the phone calls and electronic communication between I.K.N. and HERNANDEZ. All phone calls to and from the facility have a verbal admonishment that the calls are subject to recording and monitoring. All detainees have access to telephonic and messaging communication with facility phones and electronic tablets; accounts are specific to each detainee and available for use if funds are applied to their account.

OPR identified 54 calls between I.K.N. and a phone number belonging to HERNANDEZ. Separately, OPR identified many electronic messages between I.K.N. and accounts used by HERNANDEZ. Many of these communications were explicit and discussed

an ongoing sexual relationship. The corresponding IP address for the electronic messages with username Jv Vanessa were from HERNANDEZ's residential IP address, associated to a phone number belonging to HERNANDEZ and confirmed through a subpoena. HERNANDEZ communicated with I.K.N. through his detainee assigned account from OMDC.

On February 26, 2023, during a phone call between I.K.N. and HERNANDEZ, she reflected on having seen I.K.N.'s genitals. I.K.N. replied that, per his recollection, he had intercourse with HERNANDEZ on at least 13 occasions. In several of these conversations, HERNANDEZ communicates to I.K.N. that she had become pregnant with his child.

In the communications, HERNANDEZ told I.K.N. that she had captured video and possessed electronically stored data of their sexual encounters. HERNANDEZ, in her role as an IDCM, was allowed to bring electronic devices into the facility that are otherwise prohibited to the public.

During the month of March 2023, an OMDC Detention Officer (DO) observed, on at least five occasions, HERNANDEZ coming out of the closed-door meetings with I.K.N. while tugging on her clothing and re-adjusting her attire, such as pulling her dress down and fixing her hair. When the DO conducted security checks, he noted the close proximity of I.K.N. and HERNANDEZ. The DO noted on approximately 4 or 5 occasions, when he looked inside the closed-door window, HERNANDEZ and I.K.N. were standing tucked away, seemingly purposefully hiding in a blind spot of the view from the door window.

As part of her duties, HERNANDEZ had the authority to direct the movement of I.K.N. and have him moved from any location at OMDC and be brought to her location. In many instances when HERNANDEZ was with I.K.N., as reflected in videos and photographs obtained from her iCloud account, she had sole custodial authority over I.K.N. in that she was alone with I.K.N. in a room without the supervision of any other staff at OMDC.

On or about April 11, 2023, OPR Special Agents conducted an interview of I.K.N. The purpose of the interview was to discuss the relationship between HERNANDEZ and I.K.N.

During this interview I.K.N. denied that he had a romantic relationship, personal communications, or sexual contact with her. I.K.N. insisted their interactions were strictly professional.

In addition to the sexual communications, both while employed as a DHS contractor and after, HERNANDEZ offered to help I.K.N. appeal his immigration case, avoid deportation, and remain in the United States. For example, HERNANDEZ advised I.K.N. to claim mental health concerns to avoid deportation. HERNANDEZ has actively recruited attorneys to assist I.K.N with his deportation case and has contacted the Iraqi consulate office to assist I.K.N. in legally staying in the U.S. OPR learned through a search warrant of HERNANDEZ electronic devices that she gained access to I.K.N.'s U.S. Citizenship and Immigration Services (USCIS) and a personal email account titled with I.K.N.'s middle and last name.

On or about July 27, 2023, OPR obtained the contents of HERNANDEZ Apple iCloud account through a search warrant. The content included a video of HERNANDEZ and I.K.N. engaging in sexual contact and a sexual act. Additionally, there were photos of HERNANDEZ and I.K.N. standing together with the background of the rooms within the facility and I.K.N. wearing the OMDC issued attire. In one video taken on March 6, 2023, at approximately 9:42 p.m., HERNANDEZ can be seen performing fellatio on I.K.N. Logs from OMDC show that HERNANDEZ used her access key card to enter the facility at 3:01 p.m. and exited at 9:56 p.m.

Additional photographs located from this search warrant appear to show HERNANDEZ holding a positive pregnancy test. This photograph was taken on March 19, 2023. Another photograph appears to be from an ultrasound with this photograph being taken on March 30, 2023. These photographs support HERNANDEZ's communications with I.K.N. that she had become pregnant and tends to show that they had sexual intercourse.

On August 7, 2023, OPR met with I.K.N. at OMDC CoreCivic. OPR Agents showed I.K.N. still shots of the above referenced videos and photographs but I.K.N. was unwilling

to provide a statement. Immediately after OPR agents left the facility, I.K.N. called HERNANDEZ and told her that OPR agents had met with him and told her that they had pictures. HERNANDEZ became very quiet. I.K.N. asked HERNANDEZ what he should do, and HERNANDEZ advised him that I.K.N. should do whatever he felt he should do, and the call was disconnected.