ANDREW R. HADEN
Acting United States Attorney
SEAN VAN DEMARK
Assistant United States Attorney
Hawaii Bar No. 10288
ANDREW SHERWOOD
Assistant United States Attorney
California Bar No. 342419
New York Bar No. 4518106
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7657/9690
Email: sean.van.demark@usdoj.gov/andrew.sherwood@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>SHANTAL HERNANDEZ,<br><br>    Defendant. | Case No.: 23CR1821-JES<br><br>UNITED STATES' RESPONSE TO DEFENDANTS' SUPPLEMENTAL MOTION TO COMPEL DISCOVERY |

    The UNITED STATES OF AMERICA, by and through its counsel, Andrew R. Haden, Acting United States Attorney, and Sean Van Demark and Andrew Sherwood, Assistant United States Attorneys, hereby files its Response to Defendant's Supplemental Motion to Compel Discovery. This Response is based upon the files and records of the case.

//

//

## I.

## <u>STATEMENT OF THE CASE</u>

On September 6, 2023, Defendant was indicted on two counts of Sexual Abuse of a Ward in violation of Title 18, United States Code, Section 2243(b). Trial on these charges is set for May 19, 2024.

## II.

## <u>STATEMENT OF FACTS</u>

Defendant Shantal HERNANDEZ (HERNANDEZ) was previously employed as an Immigration and Detention Case Manager (IDCM), a DHS contractor with the Office of the Immigration and Detention Ombudsman (OIDO) from in or about January 2023 until she was terminated on April 30, 2023. As part of HERNANDEZ's duties, she managed the complaints of ICE detainees in various detention facilities throughout San Diego County and had unfettered access to all ICE Detention Centers. During HERNANDEZ's employment, HERNANDEZ knowingly engaged in sexual acts with I.K.N., a person who was in official detention in the Otay Mesa Detention Center under the custodial, supervisory, and disciplinary authority of HERNANDEZ.

Fifty-four OMDC-recorded phone calls between I.K.N. and a phone number belonging to HERNANDEZ revealed an ongoing sexual relationship. In the communications, HERNANDEZ told I.K.N. that she had video and possessed electronically stored data of their sexual encounters. HERNANDEZ, in her role as an IDCM, was allowed to bring electronic devices into the facility that are otherwise prohibited to the public. In several of these conversations, HERNANDEZ communicates to I.K.N. that she had become pregnant with his child.

On February 26, 2023, a 17-minute OMDC recorded phone call took place between I.K.N. to HERNANDEZ and was sexual in nature. I.K.N. and HERNANDEZ discussed having children together and the prospects of creating pornographic video content upon his release from detention. During the phone call, HERNANDEZ is heard reflecting on having

seen I.K.N.'s genitals. I.K.N. replied per his recollection, he had intercourse with HERNANDEZ on at least 13 occasions.

On March 5, 2023, in a call to 619-302-1808, I.K.N. said he has been thinking about being a father and stated, "another one for the team…another baby." During a subsequent phone call with I.K.N., HERNANDEZ took a pregnancy test while he is on the line and tells him the results only show one line and that it is still early.

In one video taken by HERNANDEZ and I.K.N. on March 6, 2023, at approximately 9:42 p.m., HERNANDEZ can be seen performing fellatio on I.K.N. Logs from OMDC show that HERNANDEZ used her access key card to enter the facility at 3:01 p.m. and exited at 9:56 p.m.

On March 10, 2023, ICE Enforcement and Removal Office (ERO) San Diego reported a suspicious relationship between HERNANDEZ and I.K.N. at OMDC, such as preferential treatment and requesting to be present at I.K.N.'s disciplinary hearing for possession of contraband (i.e., women's' underwear, unidentifiable medication) introduced from outside the facility.

On March 19, 2023, HERNANDEZ took a picture holding a positive pregnancy test.

On March 27, 2023, HERNANDEZ entered OMDC after she had been instructed by her supervisor not to go to OMDC until further notice. That day, HERNANDEZ and I.K.N. stopped communicating telephonically using number 619-302-1808, however they continued to communicate over an internet-based messaging system through an electronic tablet provided to ICE detainees at the OMDC facility. HERNANDEZ utilized an account identified as "Vanessa JV."

On March 28, 2023, DHS, ICE Office of Professional Responsibility (OPR) received information from the OMDC CoreCivic warden regarding communications between I.K.N. and HERNANDEZ, using a recorded phone at OMDC to HERNANDEZ's personal phone number. OPR obtained all the phone calls and electronic communication between I.K.N. and HERNANDEZ. All phone calls to and from the facility have a verbal admonishment that the calls are subject to recording and monitoring.

Also on or about March 28, 2023, in San Diego, California, an employee of Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), filed a complaint with the DHS Joint Intake Center alleging that HERNANDEZ had been spending an unusual amount of time with ICE detainee I.K.N. in OMDC.

On March 29, 2023, the user of "Vanessa JV" sent messages to detainee I.K.N. of an explicit sexual nature, to include a message advising him she is watching a video recording of when she gave him oral sex.

On March 30, 2023, and April 6, 2023, HERNANDEZ took several videos that depict an ultrasound. In the March 30, 2023, video, the name "HERNANDEZ, SHANTAL" can be seen in at the top left of the screen.

During the month of March 2023, an OMDC Detention Officer (DO) observed, on at least five occasions, HERNANDEZ coming out of the closed-door meetings with I.K.N. while tugging on her clothing and re-adjusting her attire, such as pulling her dress down and fixing her hair. When the DO conducted security checks, he noted the close proximity of I.K.N. and HERNANDEZ. The DO noted on approximately 4 or 5 occasions, when he looked inside the closed-door window, HERNANDEZ and I.K.N. were standing tucked away, seemingly purposefully hiding in a blind spot of the view from the door window.

As part of her duties, HERNANDEZ had the authority to direct the movement of I.K.N. and have him moved from any location at OMDC and be brought to her location. In many instances when HERNANDEZ was with I.K.N., as reflected in videos and photographs obtained from her iCloud account, she had sole custodial authority over I.K.N. in that she was alone with I.K.N. in a room without the supervision of any other staff at OMDC.

On April 6, 2023, HERNANDEZ told I.K.N. that she was at a doctor's appointment and about to see their "gift." I.K.N., in referring to the sex of the baby, asked that she let him know and not keep it from him. HERNANDEZ told I.K.N. that she would record it and will provide the video to his mother, who was scheduled to visit I.K.N. at OMDC the

following Saturday. OMDC visitor logs for I.K.N. confirmed his mother visited I.K.N. on Saturday, April 8, 2023.

On or about April 11, 2023, OPR Special Agents conducted an interview of I.K.N. The purpose of the interview was to discuss the relationship between HERNANDEZ and I.K.N. During this interview I.K.N. denied that he had a romantic relationship, personal communications, or sexual contact with her. I.K.N. insisted their interactions were strictly professional.

On August 7, 2023, OPR met with I.K.N. at OMDC CoreCivic. OPR Agents showed I.K.N. still shots of the above referenced videos and photographs but I.K.N. was unwilling to provide a statement. Immediately after OPR agents left the facility, I.K.N. called HERNANDEZ and told her that OPR agents had met with him and told her that they had pictures. HERNANDEZ became very quiet. I.K.N. asked HERNANDEZ what he should do, and HERNANDEZ advised him that I.K.N. should do whatever he felt he should do, and the call was disconnected.

## **RESPONSE TO DEFENDANT'S DISCOVERY REQUESTS**

### 1. **HERNANDEZ'S employee/HR file ISN**

The United States has been trying to obtain this file but have thus far been unsuccessful. There was a recent reduction in force which has delayed obtaining this material, but the United States is making every effort to obtain it and provide it to defense.

### 2. **Complaints/grievances filed by detainees over which HERNANDEZ had jurisdiction to respond during her time working at OMDC**

These records do not exist because HERNANDEZ was not an employee of CoreCivic/OMDC. She was an employee of ISN Corporation. As provided above, the United States is trying to obtain that file.

### 3. **IKN's entire Detention File maintained by OMDC**

This has been produced to Defendant subsequent to the filing of their motion. It was produced subject to a protective order.

**4. IKN's entire California Department of Corrections and Rehabilitation file ("CDCR")**

The United States opposes this request. "The scope of the government's obligation under Rule 16(a)(1)(c) should turn on the extent to which the prosecutor has knowledge of and access to the documents sought by the defendant in each case. The prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant" *United States v.* Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989).

Here, IKN's CDCR is controlled by the California State Department of Corrections. A separate, **State**, agency. Further, the United States is unaware of any parallel investigation that the CDCR has related to this matter. Thus, the United States does not have access to the IKN's CDCR file as it is not in the care, custody or control of any federal agency.

Further, whether IKN had sexual relations with a member of State prison staff other than the Defendant is not relevant to the present charges. There is no evidence IKN forced HERNANDEZ to have sex with him. Quite the contrary. The evidence shows that HERNANDEZ and IKN had sex numerous times and engaged in sexual conversations with each other when HERNANDEZ was outside of the facility and IKN was still in custody. Thus, whether IKN had sex with prison staff on a different occasion in a different institution, is irrelevant given the charges and conduct alleged here.

For the above reasons, this request for IKN's CDCR file should be denied.

**5. The names, job titles and contact information for all individuals with supervisory authority over HERNANDEZ while she worked at OMDC**

This was produced to Defendant subsequent to the filing of Defendant's motion.

**6. All documentation relating to HERNANDEZ'S claim that she was sexually harassed by OMDC employees in February 2023 as documented in emails to Lawrence Kay**

6

The responsive documents were produced to Defendant subsequent to the filing of Defendant's motion.

**7. A list of all training materials provided to anyone who performed the same or similar job as HERNANDEZ at OMDC**

The responsive documents were produced to Defendant subsequent to the filing of Defendant's motion.

**8. All emails, memos, reports regarding working conditions sent to HERNANDEZ and anyone else who performed the same or similar job as HERNANDEZ at OMDC.**

This was produced to Defendant subsequent to the filing of Defendant's motion.

**III.**

**CONCLUSION**

Given the position of the United States concerning discovery, the United States respectfully requests that the Court not issue any orders compelling specific discovery or preserving evidence from the United States at this time.

DATED: March 31, 2025

Respectfully submitted,

ANDREW R. HADEN
Acting United States Attorney

/s/ *Sean Van Demark*
SEAN VAN DEMARK
ANDREW SHERWOOD
Assistant United States Attorneys

7