ADAM GORDON
United States Attorney
SEAN VAN DEMARK
Assistant United States Attorney
Hawaii Bar No. 10288
ANDREW SHERWOOD
Assistant United States Attorney
California Bar No. 342419
New York Bar No. 4518106
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-7657/9690
Email: sean.van.demark@usdoj.gov/andrew.sherwood@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 23CR1821-JES |
|---|---|
| Plaintiff, | UNITED STATES' MOTIONS *IN LIMINE* TO: |
| v. | (A) Exclude Argument/Testimony Regarding Punishment, etc. |
| SHANTAL HERNANDEZ, | (B) Permit Certain Witnesses in the Courtroom |
| Defendant. | (C) Admit United States Expert Testimony |
| | (D) Admit PREA |
| | (E) Admit Inextricably Intertwined Evidence, or Alternatively, Rule 404(b) Evidence |
| | (F) Admit I.K.N. Video/Jail Calls to HERNANDEZ |
| | (G) Preclude Evidence of I.K.N.'s Current Custody Status |
| | (H) Exclude Improper Character Evidence |

            (I) Preclude Defendant from Offering Expert Testimony
            (J) Allow Attorney Voir Dire
            (K) Preclude Defendant From Offering Evidence of Sexual Harassment
            (L) Compel Reciprocal Discovery

Date: May 5, 2025
Time: 10:00 a.m.

  Comes now the plaintiff, United States of America, through its counsel, Adam Gordon, United States Attorney, and Sean Van Demark and Andrew Sherwood, Assistant U.S. Attorneys, and files its motions *in limine*.

## I.

## BACKGROUND

  Defendant Shantal HERNANDEZ (HERNANDEZ) was previously employed as an Immigration and Detention Case Manager (IDCM), a DHS contractor with the Office of the Immigration and Detention Ombudsman (OIDO) from in or about January 2023 until she was terminated on April 30, 2023. As part of HERNANDEZ's duties, she managed the complaints of ICE detainees in various detention facilities throughout San Diego County and had unfettered access to all ICE Detention Centers. During the course of HERNANDEZ's employment, HERNANDEZ knowingly engaged in sexual acts with I.K.N., a person who was in official detention in the Otay Mesa Detention Center under the custodial, supervisory, and disciplinary authority of HERNANDEZ.

  Fifty-four OMDC-recorded phone calls between I.K.N. and a phone number belonging to HERNANDEZ revealed an ongoing sexual relationship. In the communications, HERNANDEZ told I.K.N. that she had captured video and possessed electronically stored data of their sexual encounters. HERNANDEZ, in her role as an IDCM, was allowed to bring electronic devices into the facility that are otherwise prohibited to the

2

public. In several of these conversations, HERNANDEZ communicates to I.K.N. that she had become pregnant with his child.

On February 26, 2023, a 17-minute OMDC recorded phone call took place between I.K.N. to HERNANDEZ and was sexual in nature. I.K.N. and HERNANDEZ discussed having children together and the prospects of creating pornographic video content upon his release from detention. During the phone call, HERNANDEZ is heard reflecting on having seen I.K.N.'s genitals. I.K.N. replied per his recollection, he had intercourse with HERNANDEZ on at least 13 occasions.

On March 5, 2023, in a call to 619-302-1808, I.K.N. said he has been thinking about being a father and stated, "another one for the team…another baby." During a subsequent phone call with I.K.N., HERNANDEZ took a pregnancy test while he is on the line and tells him the results only show one line and that it is still early.

In one video taken by HERNANDEZ and I.K.N. on March 6, 2023, at approximately 9:42 p.m., HERNANDEZ can be seen performing fellatio on I.K.N. Logs from OMDC show that HERNANDEZ used her access key card to enter the facility at 3:01 p.m. and exited at 9:56 p.m.

On March 10, 2023, ICE Enforcement and Removal Office (ERO) San Diego reported a suspicious relationship between HERNANDEZ and I.K.N. at OMDC, such as preferential treatment and requesting to be present at Nadhim's disciplinary hearing for possession of contraband (i.e., women's' underwear, unidentifiable medication) introduced from outside the facility.

On March 19, 2023, HERNANDEZ took a picture holding a positive pregnancy test.

On March 27, 2023, HERNANDEZ entered OMDC after she had been instructed by her supervisor not to go to OMDC until further notice. That day, HERNANDEZ and I.K.N. stopped communicating telephonically using number 619-302-1808, however they continued to communicate over an internet-based messaging system through an electronic

tablet provided to ICE detainees at the OMDC facility. HERNANDEZ utilized an account identified as "Vanessa JV."

On March 28, 2023, DHS, ICE Office of Professional Responsibility (OPR) received information from the OMDC CoreCivic warden regarding communication between I.K.N., using a recorded phone at OMDC to HERNANDEZ's personal phone number. OPR obtained all the phone calls and electronic communication between I.K.N. and HERNANDEZ. All phone calls to and from the facility have a verbal admonishment that the calls are subject to recording and monitoring.

Also on or about March 28, 2023, in San Diego, California, an employee of Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), filed a complaint with the DHS Joint Intake Center alleging that HERNANDEZ had been spending an unusual amount of time with ICE detainee I.K.N. in OMDC.

On March 29, 2023, the user of "Vanessa JV" sent messages to detainee I.K.N. of an explicit sexual nature, to include a message advising him she is watching a video recording of when she gave him oral sex.

On March 30, 2023, and April 6, 2023, HERNANDEZ took several videos that depict an ultrasound. In the March 30, 2023, video, the name "HERNANDEZ, SHANTAL" can be seen on the top left of the screen.

During the month of March 2023, an OMDC Detention Officer (DO) observed, on at least five occasions, HERNANDEZ coming out of the closed-door meetings with I.K.N. while tugging on her clothing and re-adjusting her attire, such as pulling her dress down and fixing her hair. When the DO conducted security checks, he noted the close proximity of I.K.N. and HERNANDEZ. The DO noted on approximately 4 or 5 occasions, when he looked inside the closed-door window, HERNANDEZ and I.K.N. were standing tucked away, seemingly purposefully hiding in a blind spot of the view from the door window.

As part of her duties, HERNANDEZ had the authority to direct the movement of I.K.N. and have him moved from any location at OMDC and be brought to her location. In

many instances when HERNANDEZ was with I.K.N., as reflected in videos and photographs obtained from her iCloud account, she had sole custodial authority over I.K.N. in that she was alone with I.K.N. in a room without the supervision of any other staff at OMDC.

On April 6, 2023, HERNANDEZ told I.K.N. that she was at a doctor's appointment and about to see their "gift." I.K.N., in referring to the sex of the baby, asked that she let him know and not keep it from him. HERNANDEZ told I.K.N. that she would record it and will provide the video to his mother, who was scheduled to visit I.K.N. at OMDC the following Saturday. OMDC visitor logs for I.K.N. confirmed his mother visited I.K.N. on Saturday, April 8, 2023.

On or about April 11, 2023, OPR Special Agents conducted an interview of I.K.N. The purpose of the interview was to discuss the relationship between HERNANDEZ and I.K.N. During this interview I.K.N. denied that he had a romantic relationship, personal communications, or sexual contact with her. I.K.N. insisted their interactions were strictly professional.

On August 7, 2023, OPR met with I.K.N. at OMDC CoreCivic. OPR Agents showed I.K.N. still shots of the above referenced videos and photographs but I.K.N. was unwilling to provide a statement. Immediately after OPR agents left the facility, I.K.N. called HERNANDEZ and told her that OPR agents had met with him and told her that they had pictures. HERNANDEZ became very quiet. I.K.N. asked HERNANDEZ what he should do, and HERNANDEZ advised him that I.K.N. should do whatever he felt he should do, and the call was disconnected.

## II

## PROCEDURAL HISTORY

On September 6, 2023, Defendant was indicted on two counts of Sexual Abuse of a Ward in violation of Title 18, United States Code, Section 2243(b). Trial on these charges is set for May 19, 2024.

# III

# POINTS AND AUTHORITIES

### A. Exclude Argument and Testimony Regarding HERNANDEZ's Health, Age, Finances, Education, and Potential Punishment

The United States moves to preclude evidence or argument regarding HERNANDEZ's personal background, or her potential punishment, including any reference to the statutory maximum sentence for this charge. Evidence of, and thus argument referring to, HERNANDEZ's health, age, finances, and education is irrelevant under Rule 401. It is of no consequence to the determination of any essential facts in this case. Furthermore, such evidence should be excluded under Rule 403 because admission of such evidence will tend "to induc[e] decision on a purely emotional basis" in violation of Rule 403. *See* Fed. R. Evid. 403 Advisory Committee Notes; *United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998). Juries should not be influenced by sympathy. *See* Ninth Cir. Crim. Jury Instr. § 3.1. To that end, the United States expressly requests that HERNANDEZ be precluded from resorting to a common, yet entirely objectionable, tactic of "introducing" herself to the jury through the use of irrelevant family photographs and reference to her family.

Likewise, evidence and argument regarding potential punishment are irrelevant to the issue of a Defendant's guilt or innocence and raise issues under Fed. R. Evid. 403. "It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991); *Shannon v. United States*, 512 U.S. 573, 579 (1994) (providing jurors with information regarding the potential sentence "invites them to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion"). The Ninth Circuit Model Jury Instructions reflect this principle, "The punishment provided by law for this crime is for the court to decide. You may not consider punishment in deciding whether the government has proved its case against the

defendant beyond a reasonable doubt." *See* Ninth Circuit Model Criminal Instruction 7.4 (2010). For all the foregoing reasons, the Court should exclude any evidence or argument regarding HERNANDEZ's personal background or potential punishment faced.

### B. Permit Certain Witnesses in the Courtroom

"[A] person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. Fed. R. Evid. 615. The district court may permit a law enforcement officer to be present at the prosecution's table during the trial proceedings under Rule 615. *United States v. Valencia-Riascos*, 696 F.3d 938, 941-42 (9th Cir. 2012) (district court did not abuse its discretion by refusing to exclude law enforcement officer or by allowing him to sit at the prosecution's table).

Here, the case agent has been critical to the investigation and is considered by the United States to be an integral part of the trial team. Thus, the United States respectfully requests that the Court allow the case agent to be present during the entirety of the trial. The United States does not object to a defense investigator being similarly included, but would request that HERNANDEZ's testifying witnesses be excluded from the courtroom during the trial.

### C. Admit United States Expert Testimony

The United States also anticipates calling Senior Special Agent and Forensic Examiner Todd Glud of the U.S. Department of Homeland Security, ICE Office of Professional Responsibility to testify about the analysis of Defendant's devices and iCloud in this case. Federal Rule of Evidence 702 allows the admission of expert testimony where: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principle and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and in

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), it clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science. *See also Kumho*, 526 U.S. at 152. Consistently with *Kumho*, Rule 702 provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful. Consequently, the admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171 (1987).

Plainly stated, "[t]estimony is admissible under Rule 702, if the subject matter at issue is beyond the common knowledge of the average layman, the witness has sufficient expertise, and the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion." *United States v. Winters*, 729 F.2d 602, 605 (9th Cir. 1984) (citing McCormick's Handbook of the Law of Evidence § 13, at 29-31 (E. Cleary ed., 2d ed. 1972)). "If specialized knowledge will assist the trier of fact in understanding the evidence or determining an issue, a qualified expert witness may provide opinion testimony on the issue in question." *United States v. Cordoba*, 104 F.3d 225, 229 (9th Cir. 1997).

Pursuant to Federal Rule of Evidence 16(a)(1)(G), the United States provided written notice and a summary of the testimony the United States intends to use pursuant to Federal Rules of Evidence 702, 703, and 705, during its case-in-chief at trial, of Mr. Glud. His reports have also been provided in discovery.

**D.     Admit Prison Rape Elimination Act (PREA)**

The United States seeks to introduce evidence of the fact that HERNANDEZ received training on PREA. This goes directly to her knowledge that sexual relationships with detainees was not only improper, but that it was illegal.

**E.     Admit Inextricably Intertwined Evidence, or Alternatively, Rule 404(b) Evidence**

The United States seeks to introduce in its case-in-chief various messages, images, call logs, transaction logs, and other forensic artifacts located on the seized devices/iCloud. It is the United States' position that these items are inextricably intertwined with the charged conduct and are direct evidence of the criminal charges. The United States intends to introduce this information at trial to meet its burden of proof of the elements of the charged offense. Certain additional evidence may also be offered as inextricably intertwined with the charged offense, including statements made by HERNANDEZ, admissible statements made by I.K.N. regarding his relationship with HERNANDEZ leading up to HERANDEZ's arrest. There are generally two categories of other act evidence which can be considered to be "inextricably intertwined" with the charged crime so as to exempt it from the requirements of Rule 404(b). "First, other act evidence may 'constitute [ ] a part of the transaction that serves as the basis for the criminal charge.'" *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012) (quoting *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012 (9th Cir.1995)). "Second, admission of other act evidence may be 'necessary ... to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'" *Id.* Here, the nature of the relationship between HERNANDEZ and I.K.N. are all related to the conduct that serves as a basis for the charge and are essential for the United States to explain the commission of the crime. For example, the United States intends to introduce evidence of HERNANDEZ and I.D.K. engaging in sexually explicit conversations. This evidence demonstrates the nature and context of the association between them and is thus part of the conduct that serves as the basis for the charged offenses.

To the extent the Court believes any such evidence is not intertwined with the charged offense, the United States instead asserts that such evidence is appropriately admitted under Rule 404(b). Evidence of the existence of communications between HERNANDEZ and I.K.N., their conduct leading up to HERNANDEZ's arrest, including the history of their relationship, is admissible to demonstrate HERNANDEZ's opportunity,

intent, preparation, plan, knowledge, identity, and absence of mistake. Fed. R. Evid. 404(b).

### F.     Admit I.K.N. Video/Jail Calls to HERNANDEZ

The United States moves to admit I.K.N.'s video/jail calls to HERNANDEZ. They are, generally, admissible under several evidentiary rules. In some other instances, I.K.N.'s statements are admissible pursuant to the present sense impression and other hearsay exceptions. Fed. R. Evid. 803(1), 803(2), 803(3). And in many instances, I.K.N.'s de minimus statements are necessary context for HERNANDEZ's admissions by a party opponent. Fed. R. Evid. 801(d)(2).

#### 1. The Rule of Completeness.

With respect to the rule of completeness, the federal codification of such does not contemplate the exclusion of evidence because only part of a conversation is presented. Fed. R. Evid. 106 (2011).  The purpose of the rule is to prevent statements from being presented in a way which is misleading or taken out of context. *See, e.g., United States v. Liera-Morales*, 759 F.3d 1105, 1111 (9th Cir. 2014) (Affirming the district court when it "carefully and thoroughly considered the government's proffered statements from the post-arrest interview and correctly determined that those statements were neither misleading nor taken out of context."); *see also Larzelere v. State*, 676 So.2d 394, 401 (Fla. 1996) (finding that the Florida analogue's purpose "is to avoid the potential for creating misleading impressions by taking statements out of context." That simply means that if an admission by a party opponent is adduced at trial, an adverse party can require the admitting party to also introduce "any other part - or any other writing or recorded statement - that in fairness ought to be considered contemporaneously." Fed. R. Evid. 106 (2011).  It does not mean that a two-sided conversation must be admitted with only the statement made by the party-opponent. *See United States v. Osborne*, 677 F. App'x 648, 655 (11th Cir. 2017) (noting that the admission of both incoming and outgoing text messages may be necessary to provide the requisite context).

Here, the United States intends to admit, at least, the content of communications sent by I.K.N. and the content of any responses by HERNANDEZ that ought to be considered contemporaneously. Admission of statements in this fashion constitutes the same as admitting a party-opponent's conversation. Just as a conversation would lack for proper context if only one side of the conversation was admitted, so too would a series of communications in which the sent messages or party-opponent's jail call statements were admitted without reference to the messages or statements received in response. Moreover, as noted above, such messages or statements received in response may also be admissible as non-hearsay evidence or under hearsay exceptions.

**G.     Preclude Evidence of I.K.N.'s Current Custody Status**

I.K.N. is currently in custody in the Los Angeles area for a variety of criminal charges. The fact that he is in criminal custody and charged with crimes is not relevant to the charges here against HERANDNEZ. As such, evidence of his custody status and pending criminal charges should be precluded.

**H.     Exclude Improper Character Evidence.**

It is feasible that Defendant may improperly attempt to introduce testimony regarding her specific acts of prior good conduct. Testimony as to multiple instances of good conduct violates Federal Rule of Evidence 405(a). *United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987); *Government of Virgin Islands v. Grant*, 775 F.2d 508, 512 (3d Cir. 1985).

Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion except "evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same."

A character witness cannot offer specific instances of conduct by the defendant which would tend to support the reputation of the defendant. *United States v. Giese*, 597 F.2d 1170, 1190 (9th Cir. 1979) (character witnesses must restrict their direct testimony to

appraisals of defendant's reputation); *United States v. Hedgecorth*, 873 F.2d 1307 (9th Cir. 1989) ("[W]hile a defendant may show a character for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible") (internal citations omitted).

In interpreting the permissible scope of character evidence under Rule 404(a), the Ninth Circuit has ruled that presentation of witnesses to testify about a defendant's character for "law-abidingness" and honesty is permissible. *See United States v. Diaz*, 961 F.2d 1417, 1419 (9th Cir. 1992). The appellate court, however, has held that asking a defense witness about the defendant's propensity to engage in a specific type of criminal activity is not allowed under Rule 404(a). *See id.* (impermissible to ask character witness about defendant's propensity to engage in large scale drug dealing).

Thus, the United States hereby moves, *in limine*, to prohibit Defendant from introducing testimony from any character witness about (a) a specific instance of Defendant's conduct, and (b) Defendant's propensity not to be involved in child pornography.

## I.     Preclude Defendant from Offering Expert Testimony.

To date, Defendant has not complied with the notice requirement for expert testimony pursuant to Fed. R. Crim. Proc. 16(b)(1)(C). As of the date of this pleading, Defendant has not provided the name and curriculum vitae of any experts. Defendant has not produced a complete statement of the proposed expert's opinions and the bases and reasons for them. Accordingly, Defendant should not be permitted to introduce any proposed expert's testimony during Defendant's case-in-chief.

Should Defendant intend to do so, the United States requests that Defendant permit the United States to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were

prepared by a witness whom Defendant intends to call at trial. *See* Fed. R. Crim. P. 16(b). Moreover, the United States requests that Defendant disclose written summaries of testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries are to describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). *See United States v. Rincon*, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); *see also United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000).

**J.     Allow attorney voir dire.**

The United States requests that the Court allow each party equal time for attorney voir dire. The United States will separately file its request to have the Court ask certain questions of the prospective jurors.

**K.     Preclude Defendant From Offering Evidence of Sexual Harassment**

The United States requests that this court preclude HERNANDEZ from offering evidence or testimony related to allegations that she was sexually harassed by detention officers at OMDC. HERNANDEZ has requested discovery related to allegations that two detention officers made remarks concerning her appearance and sexuality to I.K.N. I.KN. then allegedly relayed this information to HERNANDEZ. Based on the reports, it appears that at no point did the detention officers harass HERNANDEZ herself. Regardless, any evidence related to these allegations is improper, irrelevant, and risks confusing the jury on a collateral matter unrelated to the allegations of this case.

**L.   Compel Reciprocal Discovery.**

As of the date preparing these motions, Defendant has produced no reciprocal discovery. The United States moves for an order requiring Defendant to provide all reciprocal discovery to which the United States is entitled under Rules 16(b) and 26.2. This includes, but is not limited to, the disclosures mandated by Rule 16(b)(2), namely all exhibits and documents that Defendant "intends to introduce as evidence in chief at the trial" and a written summary of the names, anticipated testimony, and bases for opinions of any experts Defendant intends to call at trial under Rules 702, 703, and 705 of the Federal Rules of Evidence.

## CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court grant its motions.

DATED: April 14, 2025

Respectfully submitted,

ADAM GORDON
United States Attorney

*s/Sean Van Demark*
*s/Andrew Sherwood*
SEAN VAN DEMARK
ANDREW SHERWOOD
Assistant U.S. Attorneys

14